[4] *Cf. People* v. *Eglar* (1969), 19 Mich App 563, 566; *People* v. *Harvey* (1968), 13 Mich App 211.

---

## PEOPLE *v.* BERGEVIN

### OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—COURT'S DUTY—POST-CONVICTION RIGHTS.

   A trial judge is not required to advise a guilty-pleading defendant of his right to appeal, his right to court-appointed counsel, and of the limitations on those rights.

### CONCURRENCE BY BRONSON, J.

2. CRIMINAL LAW—PLEA OF GUILTY—COURT'S DUTY—POST-CONVICTION RIGHTS.

   *A defendant who pled guilty cannot assign as error the failure of the trial judge to inform him of his post-conviction rights where the plea was entered before June 2, 1969.*

---

REFERENCE FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law §§ 459, 484–496, 505.

3. Criminal Law—Plea of Guilty—Court's Duty—Post-Conviction Rights.

> A defendant convicted of crime, whether on his plea of guilty or after a trial by a judge or after a jury trial, must be informed by the trial court of his post-conviction rights where the conviction occurred after June 2, 1969.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 March 31, 1971, at Lansing. (Docket No. 8872.) Decided May 7, 1971.

John Stephen Bergevin was convicted, on his plea of guilty, of assault with intent to commit rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnson, III,* Assistant Prosecuting Attorney, for the people.

*William J. Heynes,* for defendant on appeal.

Before: Holbrook, P. J., and Bronson and O'Hara,* JJ.

O'Hara, J. On October 4, 1968, appellant John Stephen Bergevin and Will LaVern Oaks were arrested pursuant to a complaint and warrant charging that they did unlawfully and feloniously rape, ravish, and carnally know Margaret Anita Pearce. (MCLA § 750.520 [Stat Ann 1962 Rev § 28.788].)

At the preliminary examination conducted on October 18, 1968, both defendants were bound over for trial.

Defendants were arraigned in the Circuit Court for the County of Kent on October 25, 1968, and

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

stood mute to the charge. Pleas of not guilty were entered and the case was set for trial on April 8, 1969. Following negotiations between counsel for defendants and the prosecuting attorney, a second count, charging assault with intent to commit rape, MCLA § 750.85 (Stat Ann 1962 Rev § 28.280), was added to the information, and both defendants were rearraigned and entered pleas of guilty to the second count on the day of trial. Subsequently, on May 9, 1969, the trial court pronounced sentence on both defendants, sentencing appellant John Bergevin to a prison term of not less than three nor more than ten years.

On January 7, 1970, appellant filed a petition with the circuit court requesting the appointment of appellate counsel. Since more than the 60-day appeal period had elapsed following imposition of sentence, the petition was denied. Thereafter, this Court granted appellant's delayed application for leave to appeal and the case was remanded for the appointment of appellate counsel for defendant.

Defendant assigns as error the failure of the trial judge to advise appellant at the time of sentencing of his right to appeal, of his right to the assistance of counsel if indigent, and of any time limitations on the invocation of either right.

At the arraignment and the sentencing proceedings, the trial court must conform to the dictates of GCR 1963, 785.3. As originally adopted on January 1, 1963, and as restored on June 8, 1967, and in effect at the present time, the rule provides that:

"Arraignment and Sentencing. In every prosecution wherein the accused is charged with a felony, the trial court shall conform to the following practice:

"(1) Arraignment. If the accused is not represented by counsel upon arraignment, before he is

required to plead, the court shall advise the accused that he is entitled to a trial by jury and to have counsel, and that in case he is financially unable to provide counsel the court will, if accused so requests, appoint counsel for him. If the accused states he will procure counsel or requests that counsel be appointed, a reasonable time thereafter shall be allowed for counsel to consult with the accused before his plea shall be taken.

"(2) Imposing Sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted.

"(3) Record. The trial court shall cause a stenographic record to be made and promptly transcribed of the proceedings had under (1) and (2) above, and shall certify over his signature thereto that the same is a true record of the proceedings had. Thereupon the record so made shall be filed with the clerk of the court and become and be kept as a part of the record in the case. In any subsequent proceedings such record shall be competent evidence of the facts and circumstances therein recorded.

"(4) This rule is mandatory but failure to comply therewith shall not be considered jurisdictional."

The rule specifies in detail the matters concerning which an accused must be advised of by the trial court before a guilty plea may be accepted and sen-

tence imposed by the judge. Nowhere is there any requirement that defendant at the time of sentencing be advised of his right to appeal, of his right to assistance of assigned counsel, and of the limitations on the exercise of either right. Moreover, the history of the rule indicates clearly that this omission was no oversight.[1]

Since defendant entered his guilty plea on April 8, 1969, and was duly sentenced, it is apparent that he cannot allege as reversible error the failure of the trial court to comply with GCR 785.4(1) after the repeal thereof June 8, 1967. Hence, our inquiry is correspondingly limited to the ascertain-

---

[1] Former GCR 1963, 785.4(1), adopted July 8, 1964 (373 Mich xvi) provided: "(1) Right to Timely Appeal. Hereafter, immediately upon sentencing, the court shall advise the defendant in open court that he is entitled as a matter of constitutional right to appellate review of his conviction and that, if defendant is financially unable to provide counsel to perfect such appeal, the court will appoint counsel for him and will furnish counsel with such portions of the trial transcript counsel requires to prepare post-conviction motions and to perfect an appeal. The court shall further advise defendant that such request for the assistance of counsel must be made within 60 days on a form to be given to defendant by the court. Proceedings hereunder shall be stenographically recorded and a transcript thereof promptly made and filed with the clerk of the trial court as a part of the record of the case."

The present requirements provide as underlined:

"The various amendments of GCR 1963, 785, adopted since January 1, 1963, are repealed effective instanter.

"The Court wishes to advise the profession and bench generally that the Rules Committee of the Michigan Judges Association, the Prosecuting Attorneys Association and the Special Committee on Revision of the Criminal Code of the State Bar of Michigan have been requested by the Court, and have accepted the assignment, to draft for recommended adoption such amendments of original Rule 785 as may in their judgment be required in view of constitutional interpretations and constitutional changes taking place since the General Court Rules of 1963 were considered and adopted.

"Pending submission and approval by the Court of such forthcoming amendments, *the bench and bar will proceed in accordance with original Rule 785, in accordance with article 1 of the Constitution of 1963 and in accordance with such decisions of the United States Supreme Court and of the Supreme Court of Michigan as may be deemed applicable to the particular criminal matter at hand."* 379 Mich xxx, xxxi. (Emphasis supplied.)

ment of whether compliance was had with the present GCR 785.3.

From the transcript of the arraignment, we quote, in relevant part, the questions of the trial court and the responses of the appellant and Will LaVern Oaks prior to acceptance of their guilty pleas by the court:

> *(By the Court):*
> "*Q.* Who is John Stephen Bergevin?
> "*A.* I am.
> "*Q.* Before you were in jail, where did you live?
> "*A.* 1262 Boston S.E.
> "*Q.* How old are you?
> "*A.* Twenty-nine.
> "*Q.* Married?
> "*A.* Divorced.
> "*Q.* You are Will LaVern Oaks?
> "*A.* Yes, sir.
> "*Q.* Where did you live?
> "*A.* 312 James S. E.
> "*Q.* How old are you?
> "*A.* Twenty-four.
>
> "*The Court:* May the record show that Mr. Bergevin and Mr. Oaks appear here with their attorney, Mr. Gordon Doherty.
>
> "It will not be necessary then, Mr. Doherty, to do anything with the first count to which they stood mute, because the second count, Mr. Cole, is being added after arraignment, is that correct?
>
> "*Mr. Cole:* That is correct, your Honor, the second count is being added as of today.
>
> *(By the Court):*
> "*Q.* All right, now you gentlemen know that you have a right to a trial?
> "*A.* Yes.
> "*Q.* Either before the court or before the court and a jury, do you understand that, John?
> "*A.* Yes, sir, I do.

"*Q*. Do you understand it, Will?

"*A*. Yes, sir.

"*Q*. Have you discussed the matter with Mr. Doherty?

"*A*. Yes, sir.

"*A*. Yes, sir.

"*Q*. All right, now knowing and understanding your rights, being represented by counsel and knowing and understanding the nature of the charge, which is, in the second count assault with the attempt to commit rape, and having discussed that matter with your attorney, Mr. Bergevin, are you now ready to make a plea?

"*A*. Yes, I am your Honor.

"*Q*. What is your plea?

"*A*. Guilty, your Honor.

"*Q*. You plead guilty, and Mr. Oaks, are you now ready to make a plea?

"*A*. Yes, sir.

"*Q*. What is your plea?

"*A*. Guilty.

"*Q*. John, has anybody made any promises to you to influence you to plead guilty?

"*A*. No, your Honor, they haven't.

"*Q*. Has anybody threatened you to force you to plead guilty?

"*A*. No, your Honor.

"*Q*. You are doing it voluntarily and of your own free will and accord, is that correct?

"*A*. Yes, your Honor, it is.

"*Q*. And after having discussed it with Mr. Doherty?

"*A*. Yes, your Honor.

"*Q*. Now without implicating Mr. Oaks, did you know this girl Margaret Anita Pearce?

"*A*. Yes, your Honor.

"*Q*. How did you get acquainted with her?

"*A*. I met her that first night that this alleged thing occurred.

"*Q.* That night—

"*A.* That night was the first time I met her.

"*Q.* There was an assault made, where did this take place?

"*A.* Well, we were out in an automobile out in the country, your Honor.

"*Q.* Was it in Kent County?

"*A.* I am not too familiar with this area, I believe so.

"*Q.* This claims that it occurred within the city limits of Grand Rapids?

"*A.* It could have possibly, I am not too familiar with this area, your Honor, it was not too far.

"*Q.* You did have her in the car?

"*A.* Yes, your Honor, I did.

"*Mr. Doherty:* I think we can establish the locality a little better, when they first removed her from a home here in Grand Rapids for the purpose.

(*By the Court*):

"*Q.* Where did you take her from?

"*A.* From her home apparently.

"*Q.* Where was that?

"*A.* I believe it was on First Street.

"*Q.* First Street in the City of Grand Rapids?

"*A.* Yes, sir.

"*Q.* Did you make an assault upon her?

"*A.* Yes, sir, I did.

"*Q.* You had in mind you wanted to have relations with her?

"*A.* Yes, your Honor.

"*Q.* Now Mr. Oaks, you heard me ask John these questions, would you answer them the same way?

"*A.* Yes, sir.

"*Q.* Were you with John at that time?

"*A.* Yes, sir.

"*Q.* You were both together?

"*A.* Yes, sir.

"*Q.* You did meet her at this house on First Street?

"*A.* Yes, she was sitting on the steps.

"*Q.* Has anybody made any promises to you to influence you to plead guilty?

"*A.* No, sir.

"*Q.* Has anybody threatened you to force you to plead guilty?

"*A.* No.

"*Q.* You are doing it voluntarily?

"*A.* Yes, sir.

"*Q.* Also, after having discussed it with Mr. Doherty?

"*A.* Yes.

"*Q.* Were you in the same car with John?

"*A.* Yes, sir.

"*Q.* With this girl?

"*A.* Yes, sir.

"*Q.* You met her that evening?

"*A.* Yes.

"*Q..* Had you had anything to drink?

"*A.* Yes, we had something to drink.

"*Q.* You had something to drink?

"*A.* Yes, sir.

"*Q.* Then you left the house on First Street?

"*A.* Yes, sir.

"*Q.* Did you make an assault on her?

"*A.* Yes, sir.

"*Q.* Did you have an idea in your mind you wanted sexual relations with her?

"*A.* Yes, sir.

"*The Court:* All right, I will accept their pleas of guilty, the matter will be referred to the Friend of the Court for pre-sentence investigation and report, the respondents will be remanded to jail for sentence. You have been in jail since October.

"*A.* Yes, sir.

"*The Court:* We will make an investigation as quickly as possible."

The examination of each defendant speaks for itself. It is difficult to imagine how much more thoroughly the trial judge could have conducted it.

The record also speaks eloquently, but of course with due deference to the restriction that it cannot candidly and honestly mention that the plea to a lesser included offense was negotiated between counsel for the defendant and the prosecuting attorney representing the people.

It defies reason and logic to require that after a scrupulous adherence to the quoted court rules, and the consequent ascertainment by the court that the plea was freely and voluntarily made, to say nothing of the obvious plea-bargain arrived at, with the advice of counsel, to impose on the trial judge the ludicrous, self-contradictory, and demeaning necessity of saying in simple substance:

"Now that I have determined that your plea of guilty was free and voluntary, that the elements of the offense charged were clearly present under your own admissions, and that all your constitutional protection have been assiduously protected; you have sixty days to appeal from the entry of that plea with the assistance of appointed counsel at public expense."

Nowhere in the whole litany of cases, state or Federal (absent some specific court rule or statutory requirement) is there a requirement that a trial judge is obligated to advise an accused that he has a right to appeal from what he has just freely and voluntarily done. Appeal what?

The stated ground for appeal is totally without merit.

The judgment of conviction is affirmed.

Holbrook, P. J., concurred.

Bronson, J. (*concurring*). The instant plea was accepted prior to the United States Supreme Court's

decision in *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274). The opinions from this Court hold that *Boykin* is to be given prospective effect only. *People* v. *Taylor* (1970), 23 Mich App 595; *People* v. *Butler* (1970), 23 Mich App 643; *People* v. *Boone* (1970), 25 Mich App 136. Therefore, I concur in affirming the conviction because the trial court fully complied with GCR 1963, 785.3 and MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058).

I cannot concur in the majority view that the requirement that the trial judge inform defendants of their right to appellate review, a *right* guaranteed by Const 1963, art 1, § 20, is "ludicrous, self-contradictory, and [a] demeaning necessity".

The majority opinion has properly indicated that the former court rule, GCR 1963, 785.4(1), which required that upon sentencing the defendant be advised of his post-conviction rights, has been repealed. However, in repealing GCR 1963, 785.4(1) the Court stated, in part:

"Pending submission and approval by the Court of such forthcoming amendments, the bench and bar will proceed in accordance with original Rule 785, in accordance with article 1 of the Constitution of 1963 and in accordance with such decisions of the United States Supreme Court and of the Supreme Court of Michigan as may be deemed applicable to the particular criminal matter at hand." 379 Mich xxxi (1967).

The Michigan Constitution provides, in part:

"*In every criminal prosecution, the accused shall * * * have an appeal as a matter of right;* and in courts of record when the trial court so orders, to have such reasonable assistance as may be necessary

to perfect and prosecute an appeal." Const 1963, art 1, § 20. (Emphasis added.)

The appeal as a matter of right, as provided in the Michigan Constitution, applies to all criminal convictions, whether the conviction resulted from a trial by jury, trial by judge, or a conviction upon a plea of guilty. Arguably, an appeal as of right should not be permitted from a guilty plea, but as long as the Michigan Constitution guarantees this right, no valid basis exists for differential treatment with respect to post-conviction rights.

The defendant in this case was indigent and represented by court-appointed counsel at the time of his conviction. In *United States, ex rel. Smith,* v. *McMann* (CA 2, 1969), 417 F2d 648, the Second Circuit Court of Appeals, sitting *en banc,* held that the court, irrespective of the existence or non-existence of state or Federal procedure requiring defendants to be informed of their post-conviction rights, has the affirmative duty to advise defendants of these rights. The *McMann* Court, relying on *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L Ed 2d 811), stated at p 654:

"We think the only practical, logical and fair interpretation to be given to *Douglas* v. *California* is that it *imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent.* The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to tell him so."[1] (Emphasis added.)

---

[1] It should be noted that the Sixth Circuit Court of Appeals, in *Goodwin* v. *Cardwell* (CA 6, 1970), 432 F2d 521, has held that failure

The 60-day limitation period for perfecting an appeal is designed to provide a waiver to the constitutionally-guaranteed appeal as of right. Recently, in *People* v. *McKinley* (1970), 383 Mich 529, 536, the Court stated the following with respect to waiver:

"Waiver, as that term has been repeatedly defined by this Court, is the intentional relinquishment or abandonment of a known right.  *  *  *  The Court indulges every reasonable presumption against waiver of constitutional rights.  *  *  * Intelligent waiver, of course, is made to depend upon the considered choice of defendant  *  *  *  ." (Citations omitted.)

Absent knowledge of post-conviction rights, a defendant cannot be deemed to have waived these constitutional rights. For the reasons stated, I am of the opinion that the trial judge had an affirmative duty to advise the defendant of his post-conviction rights.

---

of *retained* counsel to advise defendant of his post-conviction rights constitutes ineffective assistance of counsel so that defendant, if uninformed of his appellate rights, may obtain *habeas corpus* relief in Federal court even though the time limitation for an appeal as of right in the state court has expired. In view of this decision, as well as the Sixth Circuit's approval of *McMann*, it is suggested that the re-enactment of GCR 1963, 785.4(1) should be considered.